UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-45-RJC-DCK

| | |
|---|---|
| SPEEDWAY LLC, successor-by-merger to WILCOHESS LLC, ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) ) | ORDER |
| WILLIAM PROPERTIES, II, LLC, ARTHUR T. WILLIAMS, III, SUSAN W. MANN, and NANCY W. DOWNING, ) ) ) ) ) ) | |
| Defendants. ) ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Judgment on the Pleadings, (Doc. No. 9); Plaintiff's Memorandum in Support, (Doc. No. 10); Defendants' Response in Opposition, (Doc. No. 12); and Plaintiff's Reply, (Doc. No. 14). The matter has been briefed and is now ripe for review.

**I.   BACKGROUND**

This case centers on a series of commercial leases between Defendants (lessors) and Plaintiff (lessee). There are eight such leases[1] involving properties across three different states, over which the parties now dispute the rights and obligations that the leases created. (Doc. No. 1 at 5–7). The Court provides an abbreviated history and description of these commercial leases below based on the

---

[1] Plaintiff's original Complaint involved nine such leases, but the parties reached a resolution as to one such lease in the intervening time period. (Doc. No. 17).

1

allegations in the Complaint.

In 2014, Plaintiff Speedway LLC ("Speedway") acquired a retail business that included WilcoHess LLC (the "Hess acquisition"). (Doc. No. 1 at 10–11). Speedway thereby became the tenant on a series of leases on which its predecessor, WilcoHess LLC, had been the tenant prior to the Hess acquisition, including acquiring the right to operate numerous convenience and gas station stores as described in the leases, and assuming responsibility for paying rent on such properties to the extend described in the leases. (Id. at 7, 10–11). The lessors of the properties are the Defendants in this case. (Id. at 1–2).

These eight lease agreements contain similar rent payment requirements. Six of the leases retained fundamentally identical rental provisions under which Speedway would pay the lesser of either (a) "two cents per gallon on sales of gasoline, kerosene and diesel fuel per month and 5% of dollar sales of cigarettes and food items per month," or (b) "Six Thousand Dollars ($6,000.00) per month." (Doc. No. 1 at 4, 7, Exs. E–J). The seventh lease had a similar provision, wherein rather than providing the two options, it instead calculated rent based on (a) above while simply capping the monthly payment amount at a maximum of $6,000. (Id. Ex. D). Finally, the eighth lease assessed rent only by measuring portion (a) above without the accompanying $6,000 monthly maximum, thereby requiring rent payments only based on a percentage of sales of gasoline, kerosene, diesel fuel, cigarettes, and food items. (Id. Ex. K). In terms of location, five of the properties covered by these leases are in North Carolina, one is in South Carolina, and two are in Virginia.

2

(Doc. No. 1 at 5–7). Neither the pleadings nor the leases themselves definitively provide the location(s) from which these leases were executed. (Doc. No. 1, Exs. Nos. D–K; compare Doc. No. 1 at 7 with Doc. No. 8 at 4).

The leases were also subject to subsequent supplemental agreements. Several of the leases in question were previously subject to an April 2001 Master Lease Amendment and Assignment Agreement ("Master Agreement"), which extended the assigned leases until March 31, 2021 and provided for two five-year renewal terms, along with an option for the lessee to purchase the premises at fair market value upon the expiration of the lease. (Doc. No. 1 at 9; Ex. N at 1). The Master Agreement also required that beginning five years after the Master Agreement was signed, the monthly rental prices paid under the leases would increase in proportion to the increase in the consumer price index. (Id.). Addressing the leases not covered under the Master Agreement, upon Speedway's purchase of WilcoHess LLC in 2014, WilcoHess entered into an Addendum to Certain WilcoHess Leases with the Defendants that incorporated the Master Agreement into all remaining disputed leases. (Doc. No. 1 at 10; Ex. O).

In late 2019 Speedway informed Defendants that it would close its stores at the locations of the now-disputed leases. (Doc. No. 1 at 11). Speedway alleges that it offered to Defendants to terminate the leases early so that Defendants could market the leased properties, but that Defendants refused Speedway's offer. (Doc. No. 1 at 11–12). Speedway has taken the position that once it closes the stores at these locations, the monthly rent it will owe to Defendants at these locations is zero

3

total dollars. (Doc. No. 1 at 12). Defendants disagree, taking the position that Plaintiffs continue to owe monthly rental payments. (Id.; Doc. No. 8).

On January 22, 2020, Plaintiff filed this lawsuit to seek a declaration from the Court regarding the proper interpretation of the disputed leases, along with the rights and duties of the parties in question. (Doc. No. 1). Plaintiff's only claim for relief was a claim for Declaratory Judgment pursuant to 28 U.S.C. § 2201. (Id. at 13–14). On March 3, 2020, Plaintiff filed a Motion for Judgment on the Pleadings, asking that this Court enter judgment on the pleadings and enter a declaratory judgment holding that for any month in which there are no sales of fuel, cigarettes, or food on the premises of a disputed lease, that the amount Speedway owes Defendants in monthly rent on that lease is zero dollars. (Doc. No. 9; Doc. No. 10 at 19). Defendants have replied in opposition, and the matter has been fully brief and is ripe for adjudication. (Docs. Nos. 12, 14).

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standard as a motion to dismiss brought under Rule 12(b)(6). Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013). In examining a motion for judgment on the pleadings, a court must accept all well-pleaded factual allegations as true and should view the complaint in a light most favorable to the non-movant, drawing reasonable inferences in its favor. Mylan Labs. Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may consider the complaint, answer, and any materials attached to those pleadings or motions for

4

judgment on the pleadings "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Fed. R. Civ. P. 10(c) ("[A]n exhibit to a pleading is part of the pleading for all purposes."). Judgment on the pleadings may be granted when the undisputed facts show that the moving party is entitled to judgment as a matter of law. Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004) (citing Moore's Federal Practice, § 12.38 (3d ed.)). In contrast to a Rule 12(b)(6) motion, the court may consider the answer as well on a motion brought pursuant to Rule 12(c). Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011).

The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Thus, the applicable test on a motion for judgment on the pleadings is whether, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain

5

or whether the case can be decided as a matter of law. Alexander, 801 F. Supp. 2d at 433.

## III. DISCUSSION

Plaintiff brings a Motion for Judgment on the Pleadings seeking a declaratory judgment holding that, for all of the disputed leases, Plaintiff does not owe Defendants monthly rent for any month in which there are no sales of fuel, cigarettes, or food on the premises of the lease. (Doc. No. 10 at 1, 19). Plaintiff first suggests that the leases should be evaluated under North Carolina law based on the location of the original tenant, the location of the tenant who signed the Master Agreement, the location of several landlords, and the fact that the leases have a substantial connection to North Carolina. (Doc. No. 10 at 8). Plaintiff states, furthermore, that the outcome of the case would be the same whether North Carolina, Virginia, or South Carolina law applies. (Id.).

Plaintiff's argument in favor of judgment on the pleadings is that, first, the rental language of the leases clearly and unambiguously calculates rent based on fuel, cigarette, and food sales without providing a minimum payment amount. (Doc. No. 10 at 10–11). Second, Plaintiff argues that the disputed leases do not require any operations or particular sales, lacking any provision to require the tenant to operate the store in question, nor does any case law require that such a requirement be imputed into the leases. (Doc. No. 10 at 11–15). Third, Plaintiff argues that the implied covenant of good faith and fair dealing cannot require Plaintiff to operate a store when the lease does not require it. (Doc. No. 10 at 15–16). Fourth, Plaintiff

6

argues that equitable defenses are not available, because the freedom to contract is fundamental, and because Plaintiff is not occupying the lease for free and is providing value to Defendants. (Doc. No. 10 at 16–18).

Defendants in response suggest that the pleadings do not sufficiently demonstrate that North Carolina law applies, and argue that because the record will be better developed after discovery is taken, the Court should deny the motion for this reason alone. (Doc. No. 12 at 2–4). Plaintiff also argues that Plaintiff cannot refuse to pay rent no matter which state's law is applied, analyzing the law of New Jersey and New York in addition to North Carolina. (Doc. No. 12 at 12–16). On the substance, Defendants first argue that Plaintiff has a good faith duty under the disputed leases to continuously operate at the properties, or else pay for damages for failure to operate. (Doc. No. 12 at 5). Defendants' contention is that the rules of lease interpretation side in Defendants' favor, that the parties intended for rent to be paid, that a duty to operate or pay rent is implicit in the disputed leases, that the cases Plaintiff cites do not support Plaintiff's position, and that Plaintiff has no right to vacate unilaterally. (Doc. No. 10 at 6–12).

In reply, Plaintiff disputes Defendants' interpretation of the law and facts. Plaintiff reiterates that the language of the leases is clear and that the Court must apply the plain language under North Carolina law. (Doc. No. 14 at 2). Plaintiff argues that there is no need for the Court to undergo a choice of law analysis, because such an analysis is only necessary if the relevant laws of different states would lead to different outcomes; given that the two parties here agree that the

7

result does not depend on which state's law applies and neither party has identified a substantive difference in the laws, Plaintiff argues that the Court need not analyze whether another state's law applies. (Doc. No. 14 at 2–4). Plaintiff also argues that contrary to Plaintiff's contentions, neither New Jersey nor New York law would apply. (Doc. No. 14 at 4–5). Finally, Plaintiff argues that landlord are not entitled to any rent when there are no sales under the leases, and that Defendants misinterpret North Carolina law on this matter. (Doc. No. 14 at 5–8).

Before this Court can adjudicate the questions raised, it must determine which laws apply to the agreements at issue here.

As a federal court sitting in diversity, this Court must apply the substantive law of North Carolina, including its choice of law rules. See Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312. In North Carolina, "the provisions of a lease are interpreted according to general principles of contract law." Wal-Mart Stores, Inc. v. Ingles Markets, Inc., 158 N.C. App. 414, 418, 581 S.E.2d 111, 115 (2003) (citing Martin v. Ray Lackey Enterprises, 100 N.C. App. 349, 354, 396 S.E.2d 327, 330 (1990)). Where the parties to a contract have agreed that a given jurisdiction's substantive law will govern the interpretation of the contract, then a North Carolina court will typically give effect to that provision. Tanglewood Land Co., Inc. v. Byrd, 261 S.E.2d 655, 656 (N.C.1980). However, a contract without a choice-of-law provision is governed by the law of the state where the contract was made. Walden v. Vaughn, 579 S.E.2d 475, 510 (N.C.Ct.App.2003) (citing Bundy v. Commercial Credit Co., 157 S.E. 860, 863 (1931)). For choice-of-law

purposes, a contract was made "in the place where the last act necessary to make it binding occurred." Century Data Sys., Inc. v. McDonald, 428 S.E.2d 190, 193–94 (N.C. Ct. App. 1993) (citations omitted); see also Cole v. Champion Enters., 305 Fed.Appx. 122, 128 n. 8 (4th Cir.2008) ("Under North Carolina law, the principle of *lex loci contractus* applies to choice-of-law decisions in contract cases; therefore, we apply the law of the state where the last act essential to a meeting of the minds occurs").

"The last act necessary to make the lease agreement binding was the Plaintiff's execution of the agreement . . . ." Shoe Show, Inc. v. One-Gateway Assocs., LLC, No. 1:14CV434, 2015 WL 1128016, at *5 (M.D.N.C. Mar. 12, 2015) (citing Parson v. Oasis Legal Finance, LLC, 715 S.E.2d 240, 244 (N.C. Ct. App. 2011) (finding that the last signature on the contract constituted the location where the contract was formed). However, neither the leases nor the parties' motions definitively provide this location here. The litigants have combined to cite the laws of five different states – North Carolina, South Carolina, Virginia, New Jersey, and New York – as potentially applying to some or all of the leases in this case. It is possible that the laws of some or all of these states apply; it is also possible that the laws of a state not listed here apply. Regardless, the record does not yet sufficiently reflect the locations from which the leases were executed, nor does it provide a definitive alternative explanation and location for any other "last act necessary" to make the leases binding.

Consequently this Court is unable to determine on the current record the

location of the last act necessary to make each lease binding, and is therefore unable to determine the law that governs Plaintiff's claims. See Hill-Rom Servs., Inc. v. Verses Tech., Inc., No. 1:03CV1227, 2006 WL 1540851, at *11 (M.D.N.C. June 2, 2006) ("[T]he record fails to provide any more information as to where the last act essential to a meeting of the minds took place by any of the parties. . . . [N]either signature contains any accompanying date, time, or location. Without such information, it is not possible to determine where the contract was 'formed' under North Carolina's choice-of-law rules"). This choice-of-law question is fact-intensive and could vary from lease to lease depending on the particulars of the formation of each such agreement. Under such circumstances "[t]his question, which hangs on choice-of-law analysis, is more appropriately addressed after discovery." Morris v. Bank of Am., N.A., No. 318CV00157RJCDSC, 2019 WL 1421166, at *3 (W.D.N.C. Mar. 29, 2019).

Plaintiff urges that a choice of law analysis is unnecessary when the relevant laws of different states would lead to the same outcome. (Doc. No. 14 at 2–3, citing Perini/Tompkins Joint Venture v. Ace American Ins. Co., 738 F.3d 95, 101 (4th Cir. 2013)). While Plaintiff is correct that the parties have not identified a specific conflict of state law here, there nonetheless remains a significant risk given the premature state of the record that the choice of law determination could have a determinative effect. The parties have identified a combined five possible states whose laws might apply to one or more of the eight leases in dispute, which in turn govern properties across three different states, thereby implicating several points of

contact across several different states – the full extent of which is currently unknown in the record. The Court would be required to analyze all legal questions implicated by Plaintiff's motion simultaneously under the law of all five states, if not others, in order to satisfy itself that the analysis under all potentially-relevant state laws would lead to the same outcome. Based on the multi-state nature of the litigation and the significant number of currently-unknown facts potentially relevant to the choice of law analysis, it would be more appropriate to wait for a more fully developed record before determining which state's law applies to each lease. See Terry v. Swift Transportation, No. 1:16-cv-256, 2017 WL 1013074, at *7 (M.D.N.C. March 14, 2017) (citing Graboff v. The Collern Firm, Civ. Action No. 10–1710, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010)) (explaining that, "[d]ue to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts . . . have concluded that it is more appropriate to address the issue at a later stage in the proceedings," and that, "[h]ere, a choice of law analysis is premature because the record lacks necessary facts for the [c]ourt to conduct the fact-intensive, context-specific analysis required"); see also Beritelli v. Wells Fargo Bank, N.A., No. 1:11-CV-000179-MR, 2013 WL 5460179, at *13 (W.D.N.C. Sept. 30, 2013) ("The parties may revisit the choice of law issue at the summary judgment stage, at which time the Court will be in a better position to determine which state law is applicable."); Clean Earth of Md., Inc. v. Total Safety, Inc., No. 2:10-cv-119, 2011 WL 1627995, at *4 (N.D. W. Va. Apr. 28, 2011) ("Importantly, a court is typically in a better position to decide a choice of law issue

11

after the parties have developed the factual evidence through the process of discovery").

The record pre-discovery is insufficiently developed to determine which state's law applies to the leases under dispute, and such, the Court cannot yet adjudicate the controversy. Accordingly the Court will **DENY without prejudice** Plaintiff's motion for judgment on the pleadings. Plaintiff will be allowed to bring this motion again at a later stage in the litigation after there is a sufficiently-developed record.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants Motion for Judgment on the Pleadings, (Doc. 9), is **DENIED without prejudice**.

**SO ORDERED.**

Signed: April 13, 2021

Robert J. Conrad, Jr.
United States District Judge